# MASTER AGREEMENT FOR AIRPORT SERVICES

THIS AGREEMENT is entered into as of August 1, 2000, by and between Swissport USA, Inc., with its principal offices at 45025 Aviation Drive, Suite 350, Dulles, Virginia 20166 ("Contractor"), and Delta Air Lines, Inc., a Delaware corporation with its principal offices at Hartsfield Atlanta International Airport, Atlanta, Georgia 30320 ("Delta").

WITNESSETH:

WHEREAS, Delta desires to obtain various airport services at the airports (collectively, the "Airports" and individually, an "Airport") identified in the Annexes (the "Airport Annexes") attached hereto and incorporated herein by this reference; and

WHEREAS, Contractor is in the business of supplying such services and is willing to provide the same for Delta on the terms and conditions set forth below;

NOW, THEREFORE, in consideration of the mutual promises and covenants hereinafter set forth, the parties agree as follows:

1. TERM. This Agreement shall be effective as of August 1, 2000, and shall continue in effect until canceled by Delta giving not less than thirty (30) days' prior written notice to Contractor or Contractor giving not less than sixty (60) days' prior written notice to Delta. Notwithstanding the inclusion of specific termination dates for the Services in each Airport Annex, Delta may terminate the Services to be furnished at an Airport by giving at least thirty (30) days' prior written notice to Contractor, and Contractor may terminate the Services to be furnished at an Airport by giving at least sixty (60) days' prior written notice to Delta. The commencement dates (the "Commencement Dates") and the termination dates (the "Termination Dates") for service under this Agreement shall be as set forth in the respective Airport Annexes.

2. SERVICES AND STANDARDS.

2.1 From and after the Commencement Dates specified in the respective Airport Annexes, Contractor shall furnish to Delta at the Airports some or all of the services described in Exhibit A attached hereto as specified in each Airport Annex (the "Services"). The Airport Annexes shall be in the form set forth in Exhibit C attached hereto, and shall be executed and attached hereto from time to time by the parties. The charges for the Services shall be as set forth in each Airport Annex. The Services shall be performed in accordance with the specifications and other requirements referenced or set forth in Exhibit A. As provided in Section 4 hereof, it is understood that certain additional services may be required and shall be provided under this Agreement, even though not specifically listed in Exhibit A.

DELTA

23. SERVICES FOR HANDICAPPED. Consistent with the Air Carrier Access Act of 1986 and 14 C.F.R. 382, Contractor shall not discriminate on the basis of handicap in performing services under this Agreement. In any matter relating to the Contractor's provision of Services under this Agreement to handicapped individuals, Contractor's employees and subcontractors shall comply with any directives of Delta's Complaints Resolution Officials (CROs) which are issued under 14 C.F.R. 382.65.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date and year first written above.

SWISSPORT USA, INC.

By _____

Printed Name  A. Ivey

Title  Sr. V.P.

DELTA AIR LINES, INC.

By: _____
Wallis D. Shoppy
Director
Customer Service/Supply Chain Management

By: _____
Ira G. Pearl
Director - ACS Ground Operations

DELTA COPY

## AMENDMENT NO. 1
## TO AMENDED AND RESTATED MASTER AGREEMENT FOR AIRPORT SERVICES

THIS AMENDMENT NO. 1, made and entered into as of September 1, 2003, by and between Swissport USA, Inc., a Delaware corporation ("Contractor"), and Delta Air Lines, Inc., a Delaware corporation ("Delta").

WITNESSETH:

WHEREAS, Delta and Contractor entered into that certain Amended and Restated Master Agreement for Airport Services dated as of August 1, 2000 (such agreement, as amended and supplemented to date, is hereinafter referred to as the "Agreement"); and

WHEREAS, by Annexes (the "Airport Annexes") entered into between the parties with reference to the Agreement, Contractor has agreed to provide certain on-airport services to Delta at the airports specified in the Airport Annexes; and

WHEREAS, the parties now desire to amend the Agreement to provide for necessary changes in terms, conditions and provisions thereof in the manner hereinafter set forth;

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree that as of September 1, 2003, the Agreement shall be amended as follows:

(1) The following attachments to the Agreement are deleted in their entirety and their replacement counterparts attached to this Amendment are substituted therefor.

    Exhibit A
    Exhibit C
    Schedule I

(2) Section 2.2 of the Agreement is deleted in its entirety and the following new Section 2.2 is substituted therefor.

    2.2 The Services described in Exhibit A will be made available without further request for arrivals and departures scheduled to be made at each Airport by aircraft operated by Delta and, if designated by Delta, aircraft operated by Delta's subsidiaries and affiliates, and aircraft operated by other unaffiliated carriers ground handled by Delta from time to time (such aircraft including aircraft operated by Delta being referred to herein collectively as the "Designated Aircraft" and such carriers other than Delta being referred to herein as the "Designated Carriers"). Flights operated by Delta under trade names, however, are Delta operations for all purposes under this

DELTA COPY

Agreement. Delta will coordinate with Contractor all proposed schedule changes or additions at least fifteen (15) days in advance of the effective date thereof by written notice, and Contractor will advise Delta as to Contractor's ability to accommodate such changes within three (3) days thereafter.

(3) Section 2.11 of the Agreement is deleted in its entirety and the following new Section 2.11 is substituted therefor.

2.11 Contractor shall comply with all applicable laws, rules, regulations and procedures (including without limitation Security Directives and provisions of Delta's Aircraft Operator Security Program) which govern the Services provided for in this Agreement. Contractor shall obtain all licenses and permits which may be required by any governmental authority for the performance of the contracted Services and shall pay all fees and charges therefor. To the extent Contractor has access to sensitive security information (as defined in 49 C.F.R. Part 1520), Contractor shall restrict disclosure of and access to such information as required by and in accordance with 49 C.F.R. Part 1520. The foregoing obligations are in addition to those provided in Section 7 of this Agreement.

(4) A new Section 2.16 is added to the Agreement as follows:

2.16 Any subsidiary of Delta and Contractor may enter into an Airport Annex whereby Contractor agrees to provide the Services specified therein to such subsidiary according to the terms of said Airport Annex and this Agreement. All of the terms of this Agreement shall apply to Contractor's performance of Services for such subsidiary pursuant to such Airport Annex; provided, however, Delta shall not be deemed to be a party to such Airport Annex or otherwise to assume any obligations under such Airport Annex, and any reference to Delta in such Airport Annex or this Agreement shall be deemed for the purposes of such Airport Annex to refer to such subsidiary.

[deleted — INITIAL]

(5) The final sentence of Section 3.2 is deleted from the Agreement and all references to the "Management Fee" are deleted from the Agreement.

(6) Section 3.3 of the Agreement is amended by adding the following sentence after the sentence: "Such information/audit copies shall be marked "Do not pay"": "Together with the invoices specified in this Section 3.3, Contractor shall provide Delta with copies of all back-up documentation used by Contractor to establish the charges included in the invoices and, if the charges are allocated among more than one air carrier, Delta's proportionate share thereof."

(7) Section 3.6 is amended by adding the following sentence between the second and third sentences of that Section: "All such taxes shall be separately stated on the invoice."

(8) Section 4.3 of the Agreement is deleted in its entirety and the following new Section 4.3 is substituted therefor.

DELTA

4.3 <u>Adjustment to Unit Charge and Other Charges for Change in Scope</u>. If a change in the scope of the Services occurs at an Airport and such change in scope would significantly increase or decrease Contractor's unit cost for providing the Services at such Airport, either party may notify the other in writing in accordance with Section 12 of this Agreement that such party believes such change of scope to require an adjustment to the Unit Charge or Other Charges for such Airport, including the recommended adjustment. The parties shall diligently and in good faith try to agree on an appropriate adjustment to the Unit Charge or Other Charges, or to no adjustment, within fifteen (15) days after the date of such notice. Any agreed adjustment to the Unit Charge or Other Charges shall be set forth in an amendment to the appropriate Airport Annex.

(9) Section 6.3 of the Agreement is deleted in its entirety and the following new Section 6.3 is substituted therefor.

6.3 Delta reserves the right to reduce the scope of Services to be performed hereunder for any or all Airports upon not less than fifteen (15) days written notice to Contractor. Any reduction in scope may be accompanied by an adjustment to the Unit Charge and Other Charges pursuant to Section 4.3.

(10) Section 7 of the Agreement is deleted in its entirety and the following new Section 7 is substituted therefor.

7. <u>SECURITY CONSIDERATIONS</u>. Contractor agrees that in the performance of this Agreement it is of paramount importance to maintain the security and safety of passengers, the general public and all personnel employed at the Airport and to safeguard the security and integrity of all personal, public and corporate property. In this regard, Contractor agrees, in accordance with applicable laws, to take those actions necessary to accomplish this purpose, including but not limited to the actions outlined in this Section 7.

7.1 <u>Employment and Access Investigations</u>.

7.1.1 Contractor warrants and agrees that it has performed and will continue to perform all employment and access investigations required by and in accordance with federal law and Delta's Aircraft Operator Standard Security Program as approved by the Transportation Security Administration (the "TSA") as in effect from time to time, including, without limitation, the requirements of 49 U.S.C. § 44936 and the TSA's regulations promulgated pursuant thereto at 49 C.F.R. Parts 1542 and 1544, with respect to all persons hired or utilized by Contractor to perform the Services. Such employment and access investigations may include without limitation employment histories and verifications, verifications of identity, and criminal history records checks as and to the extent required by federal law.

DELTA COPY

    7.1.2  For all persons Contractor has hired or will hire who may operate a motor vehicle on the Airport Operating Area at the Airport (the "AOA"), Contractor will also conduct a five year check of the person's state motor vehicle record.

    7.1.3  Required employment and access investigations shall be completed for all persons prior to Contractor allowing such persons "unescorted access authority," "authority to perform screening functions," or "authority to perform checked baggage or cargo functions" (as such terms are defined in 49 C.F.R. Part 1544), prior to Contractor allowing such persons to work in the sterile area of the Airport, and otherwise as required by and in accordance with federal law, Delta's Aircraft Operator Standard Security Program and the Airport Operator's rules and regulations (said authority being referred to herein as "Special Security Authority"). Required motor vehicle record checks shall be completed for all persons prior to Contractor allowing such persons to operate motor vehicles on the AOA.

    7.2  <u>Drug and Alcohol Testing Program</u>.  Contractor warrants and agrees that, on or before the effective date of this Agreement and to the extent required by applicable laws, regulations and orders, it will establish and thereafter maintain a drug and alcohol testing program for those personnel, if so employed by Contractor, who perform safety-sensitive functions (as defined in 14 C.F.R. Part 121, Appendices I and J). Contractor agrees that such program, including without limitation the timing of placement of Contractor's personnel in safety-sensitive functions, will comply with all requirements set forth by the Department of Transportation (the "DOT"), the FAA, and any other federal agency which promulgates applicable rules or regulations concerning such testing, including without limitation DOT's Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 49 C.F.R. Part 40 ("DOT's Drug and Alcohol Prevention Program"), and FAA's requirements set forth in 14 C.F.R. Part 121, Appendices I and J. To the extent permitted by law, if Contractor employs personnel who are not covered by DOT's Drug and Alcohol Prevention Program but who will have Special Security Authority, such personnel shall be subject to pre-employment drug testing by Contractor for the same substances and in accordance with the same procedures as required by the DOT's Drug and Alcohol Prevention Program.

    7.3  <u>Additional Requirements</u>.  Contractor also agrees to undertake whatever other measures are necessary to comply with security, drug and alcohol testing, record-keeping, and other requirements appropriate to the areas to which Contractor has access or to the Services performed by Contractor under this Agreement that are imposed from time to time by public agencies such as the TSA, DOT, FAA, the United States Postal Service, the United States Customs Service, and the Airport Operator (as defined in Section 9) or by Delta. In particular, but without limiting the generality of the foregoing, if Contractor's Services hereunder include transportation, sortation, loading or unloading of the U.S. Mail, Contractor shall, to the fullest extent permitted by applicable law, comply with the requirements set forth in <u>Schedule II</u> attached hereto and made a part hereof. Any changes under this provision shall be negotiated as provided in Section 4.

DELTA COPY

7.4 **Employment Records; Return of Credentials**.

    7.4.1  Contractor shall keep at each Airport full and detailed records demonstrating its compliance with this Section 7 as to each employee employed at such Airport and shall maintain and preserve such records without additional compensation therefor for a period of three (3) years after termination or expiration of this Agreement. Delta shall have the right, but not the duty, to conduct such audits of Contractor's employment records as it deems prudent to ensure Contractor's compliance with this Section 7.

    7.4.2  Contractor acknowledges the importance of maintaining control over all access/identification media and credentials issued to Contractor's employees allowing such employees Special Security Authority or other special access authority granted by the Airport Operator or Delta ("Credentials"). Contractor shall maintain by means acceptable to Delta a current listing of all of Contractor's employees utilized by Contractor to perform the Services who require Credentials, and the type of Credentials issued to such employees. Contractor shall, within the time periods prescribed by law and by the issuing authority and by means acceptable to the issuing authority, (i) return to the issuing authority all Credentials issued to Contractor's employees upon termination of employment or disqualification for Credentials of such employees, and (ii) report to the issuing authority all lost, stolen and unaccounted for Credentials. Contractor shall notify Delta's Station Manager/Director or his designee in writing (x) of such termination or disqualification of Contractor's employees immediately after such termination or disqualification, (y) of the return of Credentials to the issuing authority simultaneously with such return, and (z) of such lost, stolen and unaccounted for Credentials simultaneously with such report to the issuing authority.

    7.5 **Security of Property**. Maintaining the security of the property of Delta and of its employees, agents, customers and invitees is an essential aspect of Contractor's performance under this Agreement. Contractor shall emphasize to its employees the importance of ensuring the security of the property of Delta and of Delta's employees, agents, customers and invitees and shall, in accordance with applicable law, take appropriate steps to ensure such security.

(11) Section 8 of the Agreement is deleted in its entirety and the following new Section 8 is substituted therefor.

    8. **PROTECTION OF DATA AND PROPRIETARY INFORMATION**.

    8.1 **Confidentiality and Prohibition Against Disclosure**. Contractor undertakes to use the information to which it gains access as a result of this Agreement, specifically including all information in Deltamatic and/or any other system which contains information concerning Delta's or the Designated Carriers' passengers or customer lists and pricing information, only for the purposes specified in this Agreement, and shall otherwise keep all such information strictly confidential and shall use such information for no other purpose. Contractor agrees to utilize appropriate physical,

DELTA COPY

logistical and informational safeguards, and appropriate password administration procedures, in order to ensure that Delta's and the Designated Carriers' information remains secure. Additionally, except as is strictly necessary to perform the terms of this Agreement, Contractor shall not pass on or disclose any data concerning Delta's or the Designated Carriers' passengers to third parties. Contractor shall comply with all applicable laws governing the protection of personal data. Contractor may make disclosure pursuant to requirements of a governmental agency or disclosure required by operation of law, provided that Contractor shall give Delta reasonable advance notice to contest such requirement of disclosure.

8.2. <u>Release From Liability</u>. Contractor will release and indemnify Delta and the Designated Carriers from and against any liability arising out of any breach of applicable data protection laws, which results from a violation of the duties contained in this Section.

8.3 <u>Proprietary Information</u>. In the course of performing Services under this Agreement, it is possible that Contractor may obtain access to confidential and proprietary information of Delta or the Designated Carriers, such as passenger or customer lists and pricing information. Contractor agrees that if it acquires such information it shall maintain such information in confidence, shall not use such information for any purpose other than performing Contractor's obligations under this Agreement and shall not disclose such information to a third party during the term of this Agreement and for three (3) years after the termination or expiration of this Agreement, unless Contractor has obtained the prior written consent of Delta. Contractor may make disclosure pursuant to requirements of a governmental agency or disclosure required by operation of law, provided that Contractor shall give Delta reasonable advance notice to contest such requirement of disclosure. These obligations shall not apply to information that has become generally available to the public by the act of one who has the right to disclose such information without violating any right of Delta or the person or entity to which such information pertains.

8.4 <u>Trade Secrets</u>. The obligations set forth in this Section are in addition to, and not in lieu of, any fiduciary duties or obligations of confidentiality or nondisclosure that Contractor may have to Delta under the common law or laws providing for the protection of trade secrets. With respect to those items of confidential or proprietary information which constitute trade secrets under applicable law, Contractor's obligations of confidentiality and nondisclosure shall survive after the 3-year period specified in Section 8.3 above to the greatest extent permitted by applicable law.

(12) Section 9.1 of the Agreement is deleted in its entirety and the following new Section 9.1 is substituted therefor.

9.1 If so designated in an Airport Annex, Delta shall provide Contractor with on-site office and operations space at the Airport named in such Airport Annex (referred to in this Section 9 as the "Premises") solely for use by Contractor in the performance of this Agreement. The size and location of the Premises shall be determined by Delta,

DELTA COPY

in its sole discretion, and may be changed if deemed necessary or desirable by Delta, in its sole discretion. This grant of the right to use the Premises in connection with this Agreement is in all respects subject and subordinate to the terms and conditions of any and all leases, permits or other agreements between the operator of the Airport (the "Airport Operator") and Delta and any and all leases, permits or other agreements between any other entity and Delta with regard to the Premises, as amended or supplemented (such leases, permits and other agreements, as amended or supplemented, are hereinafter referred to as the "Master Agreements"). Contractor shall not commit or permit to be committed any act or omission that shall violate any term or condition of the Master Agreements and shall make no alterations, additions or improvements to the Premises. Contractor shall maintain the Premises in a neat, clean, and sanitary condition and shall not permit trash, rubbish, or waste to accumulate at the Premises. Contractor shall dispose of all such materials, including without limitation hazardous waste materials, in accordance with all applicable laws, rules, regulations, ordinances and Delta's Environmental Programs Manual. Upon the expiration or earlier termination of the Airport Annex for the Airport where the Premises are located, Contractor shall return the Premises to Delta in their original condition, subject only to ordinary wear and tear, and Contractor shall properly remove and dispose of all trash, rubbish and waste. The Premises are to be used solely for the purpose of providing office space and operations space for the performance of this Agreement for Delta and shall be used for no other purpose whatsoever. Delta shall provide at the Premises utility services; provided, however, that Delta shall have no liability or responsibility, and Contractor hereby waives any claims against Delta, for any interruption or cessation of any such services, unless such interruption or cessation is caused by the gross negligence or willful misconduct of Delta.

(13) This Amendment shall be applicable to all Airport Annexes written on the Airport Annex form attached to the Agreement prior to this Amendment (the "Existing Airport Annexes"), with the following modifications and exceptions:

(i) Where the Existing Airport Annexes provide that Contractor shall provide wheelchair services, the specifications for Passenger Assistance Services contained in Exhibit A attached to this Amendment shall describe the scope of work for wheelchair services.

(ii) To the extent this Amendment removes references to the Management Fee from the prior version of the Agreement, but the Existing Airport Annexes include the payment of a Management Fee, the Management Fee provisions of the Agreement in effect prior to this Amendment shall still apply to such Existing Airport Annexes.

(iii) Nothing herein shall modify the Other Charges, Unit Charges or Management Fees specified in the Existing Airport Annexes, or their method of calculation.

(14) Except as expressly amended hereby, all terms and conditions of the Agreement shall remain in full force and effect.

DELTA COPY

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their duly authorized officers, as of the day and year first written above.

SWISSPORT USA, INC.

By: _____

Name: ANTHONY IVEY

Title: SENIOR VICE PRESIDENT

Date: March 9, 2004

DELTA AIR LINES, INC.

By: _____
Shawn D. Anderson
Managing Director - Fuel & Airport Services
Supply Chain Management

Date: 10/3/03

DELTA COPY

8. All special shipments must be accompanied by all required documentation (e.g., licenses, health certificates, permits, customer forms and invoices).

I. **Miscellaneous**
1. (a) Provide
   or
   (b) Arrange for handling of specialized cargo products, as mutually agreed. (make advance arrangements (bookings) for such shipments) (ensure presence of required documents, and acceptability for carriage)
2. Handle diplomatic mail, as mutually agreed.
3. Handle company mail, as mutually agreed.
4. Maintain daily totals of locally handled originating, transfer and terminating cargo; record type, tonnage and revenue.
5. Respond to customer inquiries about invoices and AWB details, specifically related to charges.
6. Maintain inventories and controls of both accountable and expendable supplies.

III. **OUTBOUND CARGO**
   A. **Physical Handling**
   1. Accept cargo in accordance with Delta's instructions, ensuring that
      (a) shipments are "ready for carriage"
      (b) the weight and volume of the shipments are checked. (measure shipments, as needed for density discount or dimensional weight rating)
      (c) international bookings are controlled using computer programs.
   2. Tally and assemble for dispatch, cargo up to capacity available on Delta's flights. (including COMAT shipments as space allows) (Inform ramp personnel of desired loading priorities and identify high priority items)
   3. Prepare bulk cargo.
   4. Establish the weight of load and provide Flight Control with outbound weights.
   5. Monitor backlog situations at origin and transfer points, establishing suspensions as needed. Utilize surface movement if required to relieve backlog situations or to forward 'oversize' shipments.
   6. Palletize/depalletize cargo, load/unload cargo off carts, and transfer cargo to interline carriers.

   B. **Receiving**
   Note: Contractor is responsible for performing site visits of new customers and former known shippers in accordance with TSA requirements.
   1. Follow mandatory TSA and Delta procedures for verifying the security status of cargo.
   2. A ULD receipt shall be completed for any cargo received in a ULD.
   3. Ensure that the weight and size of the entire shipment can be loaded on Delta aircraft as requested in the AWB routing.
   4. Dangerous goods will be checked, and if refused, a dangerous goods refusal form will be filled out with copy to the local Delta representative.

DELTA

D. **ULD Control**
1. Establish and maintain procedures in accordance with the ULD Coordinator Handbook for the use and management of ULD containers and pallets.
2. Exercise proper care over the handling of ULD's under Contractor's control in accordance with Delta policy and procedures.
3. Submit a physical Daily/Weekly inventory of ULD's on hand.
4. Contractor shall manage, coordinate, and enforce all rules relevant to ULD demurrage charges.

E. **Miscellaneous Equipment**
1. Forklift batteries must be stored and maintained properly.
2. Forklift battery chargers must be in proper working condition.
3. Scales must be tested periodically and calibrated semi-annually.

VI. **SECURITY**
   A. **Mail**
   1. (a) Provide
         or
      (b) Arrange for
         (1) secure storage.
         (2) physical examination.
         (3) screening. B/USPS
         (4) decompression. B/USPS

      [INITIAL: SDA]

   2. Damaged, opened, crushed, or soiled mail must be reported to Delta and the Postal authorities.

   B. **Postings**
   1. A communications bulletin board must be located within the facility.
   2. Bulletin board communications must be current and posted in an organized manner.
   3. Current advisory materials posted must be on bulletin board.
   4. Cargo/Mail service bulletins must be maintained and accessible to affected personnel.
   5. USPS mail theft posters must be prominently displayed throughout the facility.

# DELTA COPY

### Amendment No. 2
### to Amended and Restated Master Agreement for Airport Services

This Amendment No. 2 (this "Amendment"), dated as of the 1st day of November, 2004 (the "Effective Date"), to the Amended and Restated Master Agreement for Airport Services dated as of August 1, 2000, as amended by Amendment No. 1 to Amended and Restated Master Agreement for Airport Services dated as of September 1, 2003 (as amended, the "Agreement"), is between Delta Air Lines, Inc. ("Delta") and Swissport USA, Inc., a Delaware corporation ("Contractor").

WHEREAS, Delta and Contractor are parties to the Agreement; and

WHEREAS, the parties desire to amend the Agreement pursuant to the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the mutual undertakings set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Delta and Contractor, intending to be legally bound, hereby agree as follows:

1. **Amended Terms.** The terms and conditions of the Agreement shall be amended and modified to add a new Section 3.3.1 to the Agreement after Section 3.3, as follows:

> 3.3.1 Notwithstanding the provisions of Section 3.3 to the contrary, the provisions of this Section 3.3.1 shall apply from and after the Effective Date only with respect to Airport Annexes in effect on the Effective Date (and not with respect to Airport Annexes first effective after the Effective Date). The Airport Annexes in effect on the Effective Date are referred to herein as the "Applicable Airport Annexes." Delta shall pay to Contractor by electronic funds transfer a fixed portion of the monthly amount expected to be due to Contractor for Services performed under the Applicable Airport Annexes in advance without invoice on the first day of each month. Initially this amount shall be $728,370 per month. Within fifteen (15) days following the end of each month during the term of each Applicable Airport Annex, Contractor shall submit a consolidated reconciliation invoice (which shall break out all charges by Airport calculated in accordance with Sections 3.1 and 3.2 above and the Applicable Airport Annexes) for Services provided under the Applicable Airport Annexes during the preceding month. The consolidated reconciliation invoice for the Applicable Airport Annexes shall show credits for: (i) Delta's prepaid amount for the Services and (ii) an amount equal to 5.97% of the total charges shown on the consolidated reconciliation invoice before application of the credit for Delta's prepaid amount. Contractor shall submit its consolidated reconciliation invoice to Delta at the address specified in Section 12 of this Agreement, with information/audit copies of each Airport's component invoice included within the consolidated reconciliation invoice to such Airport at the billing address specified in the applicable Airport Annex. Such information/audit copies shall be marked "Do not pay." Such invoices shall include adequate documentation and sufficient detail so as to allow proper



-1-

SYS 73835

DELTA COPY

auditing by Delta (to the satisfaction of Delta) to verify actual Services performed. Delta shall pay undisputed amounts invoiced on the consolidated reconciliation invoice within ten (10) days of receipt of said invoice. If the reconciliation invoice shows an amount due to Delta, such amount shall be refunded to Delta simultaneously with delivery of the reconciliation invoice. Notwithstanding the foregoing, if the prepayment amount for Services under the Applicable Airport Annexes as stated above exceeds 92% or is less than 88% of the amount actually due to Contractor for Services performed under the Applicable Airport Annexes during the month for which such payment is made for more than two (2) consecutive months, the prepayment amount shall be adjusted at the election of either party, to be equal to 90% of the average of the actual amount due for Services under the Applicable Airport Annexes for the immediately preceding two (2) months. Delta shall make the monthly prepayments to Contractor via wire transfer to:

> Swissport USA Inc.
> SunTrust Bank
> ABA # 061000104
> Account # 202131386
> Credit the account of Swissport North America, Inc.

## 2. Miscellaneous.

(a) This Amendment constitutes the entire understanding of the parties with respect to the subject matter hereof, and any other prior or contemporaneous agreements, whether written or oral, are expressly superseded hereby.

(b) This Amendment may be executed in any number of counterparts (including via facsimile), each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument.

(c) Terms not defined in this Amendment shall have the same meaning ascribed to them in the Agreement.

(d) As modified by this Amendment, all terms and conditions of the Agreement and the Airport Annexes thereunder shall remain in full force and effect and are hereby ratified and confirmed.

IN WITNESS WHEREOF, the parties have executed this Amendment by their undersigned duly authorized representatives:

Swissport USA, Inc.

By: _____
Name: ANTHONY IREY
Title: Sr VP

Delta Air Lines, Inc.

By: _____
Name: Shawn D. Anderson
Title: Managing Director - SCM

SYS 73835