**HYMAN SPECTOR & MARS, LLP**
Attorneys for Defendant, UTi United States, Inc.
150 W. Flagler Street, Ste. 2701
Miami, Florida 33130
Tel: (305) 371-4244
Fax: (305) 371-5930
Attorney: Andrew R. Spector

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

AMERICAN HOME ASSURANCE COMPANY,

       Plaintiff,                     **CASE NO.: 07 Civ. 6219 (DC)**

vs.

DELTA AIR LINES, INC., UTi UNITED
STATES, INC., & SERVICIOS LOGISTICS
INTEGRADOS, SWISSPORT USA, INC.

        Defendants,
_____/

## UTi, UNITED STATES' MEMORANDUM OF LAW MOTION
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      Defendant, UTi, UNITED STATES (hereinafter "UTi"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, hereby files this, its Memorandum of Law in Support of its Motion for Summary Judgment, and in support thereof states:

**I.      FACTUAL SUMMARY AND PROCEDURAL BACKGROUND.**

      This matter involves the shipment of pharmaceutical products from Plaintiff, Bristol-Meyers Squibb, located in Plainsboro, New Jersey to Bristol-Meyers Squibb, SL, located in Barcelona, Spain. Plaintiff hired UTi, United States, Inc. (hereinafter "UTi") to act as a freight forwarder and arrange for the transportation of the cargo via air carrier to its subsidiary in Barcelona.

To that end, UTi, on behalf of Bristol-Meyers, arranged for Delta Air Lines, Inc. to serve as the air carrier for the transportation of the cargo from JFK International Airport in New York to the airport in Barcelona. UTi caused to be issued house air waybill JFK71673835.

Plaintiff itself directly hired a third-party ground transporter (a non-party hereto) to move the shipment, allegedly consisting of 1392 cartons of Megace (hereinafter "subject cargo") from its facility in Plainsboro, New Jersey to JFK and directly into the possession of Delta Airlines. Plaintiff, or its agent or subcontractor loaded the subject cargo at the New Jersey facility. It is undisputed that no representative of UTi witnessed the cargo being loaded. It is undisputed that UTi had no involvement with the loading, transportation and unloading of the subject cargo at any time from the Plainsboro facility to JFK. The cargo was unloaded at JFK and delivered into the possession of Delta Airlines. It is undisputed that no representative of UTi was present during the unloading of the cargo nor at the time of delivery into the possession of Cross-defendant, Delta Airlines. According to the Delta Airlines master air waybill 00644719846 issued for the transportation by Delta of the cargo the subject cargo was accepted by Delta Airlines in good order and condition, and Delta Airlines made no notations as to any apparent damage or discrepancy.

Delta Airlines, in turn, allegedly hired Swissport USA, Inc., as its cargo handler to load the cargo onto Delta aircraft. Delta, or its subcontractor Swissport, unpackaged the subject cargo in its possession. Thereafter, Delta, or its subcontractor Swissport, divided the subject cargo into separate shipments and repacked them. The shipments were then allegedly loaded into the cargo holds of Delta's aircraft.

Upon arrival in Barcelona, the cargo was unloaded by Worldwide Flight Services ("WFS"). It was immediately apparent to WFS that the cargo had arrived damaged. WFS prepared its damage report, noting that the packages were broken and contained broken seals. The damage report states that the damage was noticed upon offloading upon arrival at Barcelona.

2

WFS then apparently delivered the subject cargo to Defendant Servicios Logistics Integrados ("SLI") to be stored until pickup by Bristol-Meyers Squibb in Barcelona.

Bristol-Meyers Squibb then brought suit against Delta Airlines, UTi and SLI for the alleged damages to the cargo. UTi, in turn filed its cross-claim against Delta Airlines for indemnity and/or contribution. Delta, in turn, filed a third-party claim against Swissport. Thereafter, Plaintiff filed its Amended Complaint, joining Swissport as a co-defendant in this action. Delta has filed a cross-claim for indemnity and contribution. Swissport has also filed a cross-claim seeking contribution. For the reasons set forth herein, UTi is entitled to summary judgment in its favor on Plaintiff's claims against UTi, on UTi's cross-claim against Delta, and on Delta's and Swissport's cross-claims against UTi.

## II.     INTRODUCTION.

As set forth above, UTi has moved for summary judgment on its own cross-claim against Cross-Defendant Delta based upon Delta's liability under the Montreal Convention (UTi is the shipper on the Delta air waybill). Simply put, Delta is strictly liable, absent certain enumerated defenses, for damages to goods which occurred during air transport within the meaning of Article 18 of the Convention. UTi is the shipper and party in privity with Delta on the subject master air waybill and accordingly is entitled to summary judgment for the damage to goods. While Delta has asserted that it was its own sub-agent, Swissport, who was responsible for the loss of or damage to the subject goods, and that it is entitled to reimbursement through indemnity from its agent pursuant to a separate contractual agreement, this is an argument for a different day. Nothing can change Delta's liability to UTi, particularly in light of the undisputed record before this Court.

UTi has also moved for summary judgment asking this Court to dismiss as a matter of law the claims for indemnity and contribution submitted by Delta and Swissport as against UTi. Despite the lenient notice pleading rules of the Federal Rules of Civil Procedure, both Delta and Swissport have wholly failed to identify any source of any duty or obligation on the part of UTi whereby UTi could be

held liable to a downstream carrier. Rather, any provable negligence on the part of UTi (the record is devoid of any), would only serve as a defense, to bar an action against Delta or Swissport. Same would not serve as an affirmative cause of action. The undisputed record of this case reveals that UTi had no obligation other than the retention of Delta. The record fails to illustrate a single fact which would lend credence to the theory that UTi contributed in any manner to the loss or damage complained of in the instant suit. To the contrary, the undisputed record states otherwise.

Finally, UTi has also moved for summary judgment and/or partial summary judgment on Plaintiff's claim against UTi. Plaintiff's failure to declare value for carriage renders the aggregate damage claim in this case subject to the liability limiting provisions of the Montreal Convention, or 17 SDRs per kg. Further, because the Plaintiff is unable to proffer any evidence of any theory of liability against UTi (other than purely a technical derivative liability); and because the clear and undisputed record reveals that Delta and Delta's agent/contractor was primarily liable for this loss, Plaintiff cannot obtain a judgment against UTi. Rather, Article 30 of the Convention reveals that the total aggregate damage claim which can rest with the Plaintiff will be the full liability limits. In other words, suppose the weight-based limitation of liability is $100,000.00; and there are three successive carriers. Plaintiff's recovery is limited to $100,000.00 in toto; not $300,000.00. Therefore, since Delta will be unable to avoid a summary judgment in favor of UTi, any judgment of liability in favor of the Plaintiff should pass-thru to Delta.

## III.    MEMORANDUM OF LAW.

### A. Legal Standard on Motion for Summary Judgment

It is axiomatic that Summary Judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

For each of the reasons set forth herein, there are no material facts in dispute which would preclude the entry of summary judgment and/or partial summary judgment as outlined above and UTi is entitled to judgment as a matter of law.

### B.    UTi, as an Air Freight Forwarder is Deemed a Carrier under the Montreal Convention.

The Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on 28 May 1999 (hereinafter "Montreal Convention"), entered into force in the United States on November 4, 2003, updating and replacing the uniform system of liability for international air carriers previously established by the Warsaw Convention. *Ehrlich v. Am. Airlines. Inc.,* 360 F.3d 366, 371 n. 4 (2d Cir.2004).   The Montreal Convention, like its predecessor, is the sole vehicle by which a claim for cargo damaged in international transport via aircraft may brought.   The Montreal Convention "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Id*. at 371.

The law, and the unambiguous language of the Montreal Convention is clear:

> Article 29 – Basis of Claims
>
> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights….

As Article 29 suggests, the Montreal Convention preempts all other claims falling within its scope. This will include claims for indemnity or contribution. The Second Circuit has declared of the Warsaw Convention that " 'all state law claims that fall within the scope of the Convention are preempted.'" *Fishman v. Delta Air Lines. Inc.,* 132 F.3d 138, 141 (2d Cir.1998). Because the two conventions' preemptive language is substantially similar, they have "substantially the same preemptive effect." *Paradis v. Ghana Airways Ltd.,* 348 F.Supp.2d 106, 111 (S.D.N.Y.2004) ("Article 29 of the Montreal Convention simply clarified the language of ... Article 24(1) of the Warsaw Convention."). As the Southern District of New York recently noted, since many similar provisions of the Warsaw Convention remain, courts use cases interpreting the Warsaw Convention to interpret similar Montreal Convention provisions. *Vigilant Ins. Co. v. World Courier, Inc.* 2008 WL 2332343 at n. 3 (S.D.N.Y. June 4, 2008) (citing *Baah v. Virgin Atlantic Airways Ltd.,* 473 F.Supp.2d 591, 595-596 (S.D.N.Y. 2007); *Paradis v. Ghana Airways Ltd.,* 348 F.Supp.2d 106, 110 n. 4-5 (S.D.N.Y. 2006).

Plaintiff brought its claims to be governed under the Montreal Convention. UTi concedes that the Montreal Convention governs in this matter. The cross-claims are also governed by and subject to the Convention.

UTi, as a freight forwarder or indirect air carrier, is entitled to the limitations of liability found in the Warsaw and Montreal Conventions. *Royal Insurance v. Amerford Air Cargo*, 654 F.Supp. 679 (S.D.N.Y. 1987). In *Royal Insurance*, the Southern District relied upon federal regulations in defining

6

an air freight forwarder as an indirect air carrier, which is defined as an entity which undertakes indirectly to engage in air transportation of property only does not engage directly in the operation of aircraft in air transportation. *Id*. at 681 (relying on 14 C.F.R. § 296.1(e)).  The Court distinguished between direct and indirect air carriers, noting that "[t]he difference between direct and indirect air caries has been defined as follows: direct air carriers are those who operate aircraft, while indirect air carriers hold out a transportation service to the public under which they utilize the services of a direct carrier for the actual transportation by air….**Although they carry no merchandise themselves, the forwarders assume the responsibility of a carrier**, but ship by air in direct carrier's planes." *Id*. at 682 (quoting *DHL Corp. v. Civil Aeronautics Board*, 584 F.2d 914, 915 (9th Cir. 1978) (emphasis added).

As the Southern District held in another case, "for purposes of being a carrier, it is insignificant that [the indirect air carrier] did not actually transport the cargo, either by air or otherwise, since an indirect air carrier by definition need not be involved in the physical transportation of the goods." *Martin Marietta Corp. v. Harper Group*, 950 F.Supp. 1250, 1256 (S.D.N.Y. 1997).

It is undisputed that UTi acted as an indirect air carrier, or freight forwarder for the subject cargo.  UTi was hired by Bristol-Meyers to arrange for the transportation of cargo from JFK to Spain. (Affidavit of Kevin Woods, ¶ 7).  UTi never had possession of the cargo.  (Affidavit of Kevin Woods, ¶ 9, 10).  UTi was never a cargo handler for Delta Airlines. (Delta's Answer to the Amended Complaint, paragraph 3; UTi's Answer, paragraph 4; and Affidavit of Kevin Woods. ¶ 7, 9 , 10, 11, 12, 13, 14).  UTi issued House Air Waybill JFK71673835, in which UTi United States is listed as the Carrier, and which specifically provides that the carriage is "subject to the terms and conditions of contract on the reverse hereof."  UTi hired Delta Airlines to carry the cargo, and issued the master air waybill to cover this shipment.  Under the terms and conditions of the contracts, on the face of the air waybills, and by the undisputed admissions of both Delta and UTi representatives, UTi operated at all times relevant as an indirect air carrier or freight forwarder.  Under the case law interpreting the

7

Warsaw Convention/Montreal Convention, the terms and conditions, and limits on liability apply to UTi as a carrier. As the Southern District held, "[t]here is no logical reason to deny the freight forwarder resort to the Convention solely because it does not undertake the functions of air carriage directly, especially as the Convention does not differentiate between direct and indirect air carriers, or otherwise define air carrier. *Id.* at 1257 (quoting *Royal Insurance*, 654 F.Supp at 683). The Southern District has made clear that, "[l]ogically, it follows that an entity which is a "carrier" under the treaty is the "first carrier" if it was the first to transact with the consignor by arranging transportation for the cargo aboard the direct carrier." *Id.* In the instant case, UTi is clearly an indirect air carrier and is therefore subject to the terms and limitations of the treaty.

### C. UTi is Entitled to Judgment as a Matter of Law on its Cross-claim Against Delta.

The evidence clearly indicates that any alleged damages to the cargo occurred while same was in the care, custody and control of Delta Airlines and/or Swissport Therefore, UTi is entitled to summary judgment on its cross-claim for indemnity as against Delta Airlines.[1]

Although the issue of liability has yet to be decided in this matter, UTi is nevertheless entitled to move for summary judgment as to its cross-claim for indemnity. *See American Home Assurance Co. v. Hapag Lloyd Container Line*, 385 F.Supp.2d 316 (S.D.N.Y. 2005). Similar to the instant action, in *Hapag Lloyd*, the subrogated insurer brought suit against the carrier and freight forwarder, and the freight forwarder brought a cross-claim for indemnity against the carrier and moved for summary judgment on the cross-claim.

In *Hapag Lloyd,* the carrier argued that the motion for summary judgment for indemnity should be denied because the carrier had yet to be found negligent and the cause of the cargo loss had not been litigated at the time of the motion. The court rejected this argument since the carrier did not dispute

---

[1] While Delta's liability may also only be technical or vicarious, Delta has nevertheless admitted that the cargo was damaged while in its care, custody or control after Delta accepted same for transport under the master air waybill.

that the goods were lost while within its exclusive custody, and failed to raise any possibility that it may be the freight forwarder's fault that the goods were lost. The court found that "absent other factual issues, a trier of fact could reasonably believe that [the carrier] is the primary wrongdoer and must indemnify [the freight forwarder] for its loss." *Id*. at 322.

Likewise, in the instant case, Delta fails to raise any possibility that it was UTi's fault that the cargo was damaged. Instead, Delta admits to having received the cargo and having transported it to Spain. Delta admits to hiring its subcontractor, Swissport, whom Delta claims damaged the cargo was preparing it for transport aboard Delta's aircraft. No doubt a trier of fact in this matter could quite reasonably believe that Delta is the primary wrongdoer and be liable to indemnify UTi, as the freight forwarder for any loss. The Southern District of New York applied common law principles of indemnification that a primary wrongdoer must indemnify a party whose liability is secondary or vicarious. *Id*. at 321 (citing *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705 (2d Cir. 1990)).

In *Victoria Sales*, the shipper brought a claim for indemnity against the carrier for loss of a shipment of pharmaceutical products which occurred while the cargo was in the custody of the carrier. The Second Circuit found that since the carrier could not contend that the loss was the result any fault of the shipper, the shipper's liability for the loss could only be based upon its contractual obligation. *Id*. at 708. The Second Circuit agreed with the shipper's argument that it was only vicariously liable for the loss, and that the carrier, "as the party primarily liable for the lost cargo, must bear the loss, and [shipper] is entitled to indemnification." *Id*. Similarly, in the instant matter, Delta, as the party primarily liable for the lost cargo, must bear the loss and UTi is entitled to summary judgment in its favor on its indemnification cross-claim against Delta.[2]

---

[2] It is expressly noted that Delta has in turn brought claims seeking indemnification from Swissport. Any such claim has no effect, however, on UTi's claim for indemnity from Delta. If both UTi and Delta succeed in their cross-claims, the Plaintiff will nevertheless be entitled to recover from Swissport.

The clear and undisputed record before this Court reveals that UTi never had possession of the cargo. (Affidavit of Kevin Woods, ¶ 9, 10)  Further, it is also undisputed that the packaging of the cargo or transportation of the cargo from Bristol-Meyers' facility in New Jersey to JFK.

UTi was hired by Bristol-Meyers to act solely as the freight forwarder of the cargo. (Affidavit of Kevin Woods, ¶ 7).  In its capacity as freight forwarder, or indirect air carrier, its sole responsibility consisted of the issuance of the transportation documents and the procuring of Delta Airlines to physically transport the cargo.  It is undisputed that the cargo was never in the possession, custody or control of UTi. (Affidavit of Kevin Woods, ¶ 9, 10).  Rather, the cargo was packaged by Bristol-Meyers at the Bristol-Meyers facility and transported by the plaintiff's own subcontractor to JFK. (Affidavit of Kevin Woods, ¶ 9).  Once at JFK, the cargo was unloaded and delivered into the possession of Delta Airlines for transport to Spain. (Affidavit of Kevin Woods, ¶ 9).  Delta's air waybill, # 066-44719846, provides, in pertinent part, that "It is agreed that the goods described herein are accepted in good order and condition (except as noted) for carriage…."  Delta noted no exceptions to the conditions of the cargo or its packaging (Affidavit of Kevin Woods, ¶ 8).

 It is also undisputed that any damages to the cargo occurred prior to its being unloaded by WFS at the airport in Barcelona.  The damage report clearly notes that the damage was visible upon offloading upon arrival.  In fact, in its Motion for Summary Judgment against Swissport, on Page 2, Delta states that "While handling the shipment a portion of it fell off a dolly on which Swissport was transporting it to the intended flight and had to be reloaded for carriage on another flight." Delta goes on to state "that the cargo was damaged as a result of this incident at J.F.K." Clearly, UTi is not the entity responsible for any damages to the subject cargo.  Equally clear is that no evidence can possibly be introduced that can refuter this fact, given the admissions of co-defendant Delta.  UTi must therefore be exonerated from all liability for the alleged damages.

Further, since Delta received the cargo in good order and condition and made no noted exceptions, it must therefore be concluded that the cargo, if damaged, was damaged while in the

possession of Delta Airlines.  Delta Airlines is therefore directly responsible for the damages to the cargo.  UTi's liability, on the contrary, as an indirect air carrier is merely technical and/or vicarious, while Delta's liability is primary and direct.  As such, UTi is entitled to be indemnified for any loss it incurs as a result of this claim.

UTi did not handle the cargo, nor was it ever in possession of same at any time. (Affidavit of Kevin Woods, ¶ 9).   UTi was not the cargo handler for Delta, as alleged in the Amended Complaint.  Delta Airlines expressly admitted this in its Answer to the Amended Complaint, paragraph 3 (See also Answer filed by UTi, paragraph 4).

Delta Airlines admits to receiving the cargo from Plaintiff.  Specifically Delta, in its Answer, states:

> 5. [Delta] …admits that it received twelve pieces of freight described as "consolidated cargo", the contents and condition of which were unknown to this defendant, for carriage between New York, New York and Barcelona, Spain, pursuant to Delta air waybill number 006-4471-9846.

Furthermore, its Third-Party Complaint, paragraph 8, Delta admits to transporting the subject cargo:

> 8.    On or about September 23, 2006, a shipment of pharmaceuticals was transported from John F. Kennedy International Airport ("JFK") to Barcelona, Spain by defendant/third-party plaintiff DELTA on behalf of plaintiff's subrogor, Bristol Meyers Squibb.

Furthermore, there can be no doubt but that the damages, if any, occurred while in the care, custody and control of Delta, or its subcontractor, at JFK airport.  In its Third-Party Complaint, Delta alleged:

> 10.    At all times relevant to this action, SWISSPORT was the designated entity responsible for handling cargo on behalf of DELTA at JFK.

> 14.    At all times relevant to this action SWISSPORT was the designated entity responsible for handling cargo on behalf of DELTA at JFK, the location at which the alleged damage occurred.

Delta clearly admits that the cargo was damaged at JFK. Delta claims that Swissport was the entity charged with handling the cargo for Delta at JFK. Delta admits, however, that it hired Swissport to load this cargo. In its Answer to the Amended Complaint, Swissport stated:

> 8.    …Swissport admits that in September 2006 it handled the goods at issue at JFK International Airport in New York pursuant to a Master Agreement for Airport Services by and between Swissport and Delta Air Lines, Inc. dated August 1, 2000.

It is clear from Delta's own admissions that the cargo was damaged when it was depalletized and re-palletized in preparation for transport. Swissport admitted to handling the cargo at JFK. In its Third-party complaint, Delta specifically admits states:

> 15.    Any damage to cargo transported by DELTA from JFK to Barcelona happened while the cargo was in the possession and control of SWISSPORT. Pursuant to the Agreement, Exhibit A, Section 2 "Cargo Handling Specifications," Subsection III(A)(8), SWISSPORT is specifically responsible for palletizing/depalletizing cargo. It is apparent from the evidence submitted in this action that any alleged damage to the cargo would have taken place while the cargo was being palletized/depalletized in preparation for transport.

Delta alleges that Swissport was the entity which damaged the cargo. For purposes of this Motion, however, it is irrelevant whether Delta or the entity it hired actually damaged the cargo. The important, and undeniable, fact is that UTi was obviously not directly responsible for any alleged damage to the subject cargo. UTi's liability, if any, is merely technical, given its contractual obligations as an indirect air carrier. Delta, and/or its subcontractor are the entities which directly caused any alleged damages.

Additionally, UTi's lack of direct liability is further evidenced by the allegations, or lack thereof, contained within the Amended Complaint itself. In its Amended Complaint, paragraph 8, however, Plaintiff states:

> EIGHTH: Thereafter the defendant Swissport handled the shipments and defendant Delta delivered those shipments to SLI, who in turn delivered the goods to plaintiff's assured or its representatives; however, they were not in the same good order and condition as when shipped but rather in bad order with physical

damage, all in violation of the said defendants' duties as a common carriers of merchandises by air for hire and/or as cargo handlers.

UTi is noticeably excluded by Plaintiff from the allegations this paragraph. Specifically, Plaintiff now claims that Swissport handled the shipment and Delta transported same. Plaintiff alleged that the damages incurred were in violation of Swissports' and Delta's duties as common carrier and cargo handler. Plaintiff specifically excludes any allegations as to UTi with regard to the handling and transportation of the cargo. In fact, the Amended Complaint is entirely devoid of any allegations as to any breach of duty committed by UTi. Clearly UTi is not directly responsible for the alleged damages, as evidenced by the assertions made by both co-defendant and Plaintiff.

Further evidence of UTi's lack of involvement in the alleged damages are provided by Plaintiff's own survey report. This Survey Report No. 2006/718 Y. Ref. 0071452 was produced in response to requests for production of documents, propounded by UTi upon Plaintiff.

The Survey Report, at page 3, clearly provides that "the shipments, on arrival at Barcelona Airport, had been discharged by the handlers, Worldwide Flight Services, who had filled in a damage report stating the following: "Packaging broken, seals broken. Detected on arrival." Furthermore, the Survey Report, at page 3, provides that:

> During the inspection together with technical staff of Bristol Myer [sic] Squibb S.L., the Undersigned observed that pallets had been dismantled with the seals being broken. After careful inspection the following result was found:
>
> - 4 pallets, (Nos. 4, 9, 10 & 11) containing a total of 600 boxes, were found to be in good condition and with original packaging
> - Carton boxes crushed and stained.
> - Some of the boxes in the pallets were the wrong side up
> - Soil was found on some boxes
> - Different types of pallets, some orange, had been used.
> - One box (pallet No. 1) which should have contained 12 bottles of MEGACE Oral Suspension, was completely empty. This empty box appeared crushed within the pallet.

The Survey Report, at page 4, found that:

> [T]his shipment was to be shipped as freight on freight carrier.  However, in New York the shipment, for unknown reasons, was loaded in the hold on passenger flights.  As the hold for passenger flights is smaller than freight carriers, the pallets were dismantled so that they would fit in the free spaces in the hold.  Thus the MAWB with part shipment stamp.  The marks on the boxes clearly state "THIS WAY UP" which was not heeded as boxed arrived wrong side up.  Also temperature conditions for the product are clearly stated which are not found in the hold of passenger aircraft."

Surveyors concluded, on page 5 of the Survey Report, that:

> [T]he damage to the shipment…has been caused by dismantling of the pallets in non adequate warehouse, apparently on open esplanade due to the fact that most of the boxes showed evidence of soil and plants.  Furthermore, the instructions stated on each carton were not respected, as boxes were upside down and crushed.

Surveyors further noted: "As there is no exception noted on the MAWB, the shipment was delivered in good condition to Delta Cargo in JFK Airport in New York."

The Survey Report, produced by Plaintiff, and conducted on behalf of plaintiff, clearly reveals that the cargo was damaged as a result of dismantling of the shipment and repacking of the cargo onto Delta's aircraft by either Delta or Swissport.  The Survey Report clearly supports the evidence that the cargo was damaged as a result of the actions of depalletizing and repackaging the cargo to prepare it for transport.  These actions by Delta and/or Swissport were undertaken without the knowledge or consent of UTi. (Affidavit of Kevin Woods, ¶ 9).

There can be no doubt whatsoever that any alleged damage to the cargo was not the result of any actions or inactions of UTi.  Further, the Amended Complaint fails to even include any allegations that UTi took any actions that damaged the cargo.  On the contrary, the allegations in the Amended Complaint focus solely upon the actions of Delta and is subcontractor.  Further, the evidence clearly indicates that the damage, if any, occurred as a result of the actions or inactions of Delta and/or its subcontractor.  This evidence cannot be disputed.   There is no dispute as to the material fact that Delta, or its subcontractor, rather than UTi, was the entity primarily and directly responsible for any alleged damages.

Delta accepted the cargo in good order and condition.  It is entirely irrelevant, in terms of UTi's liability, where the damage occurred.  Had the damage occurred prior to delivery at JFK, all parties hereto would be absolved as the damages would be attributable to the shipper.  Delta has provided evidence, however, that the damage occurred while in the possession of Swissport, the entity with which Delta contracted to handle the subject shipment at JFK.  No party has provided any evidence whatsoever of any negligence by UTi which contributed to the alleged damages.  It simply has not, and cannot be disputed that any damage to the cargo occurred while in the possession and control of a party other than UTi.

        **D.**     **UTi is entitled to judgment as a matter of law on Delta's cross-claims against UTi for indemnity and contribution and on Swissport's cross-claim for contribution.**

In its Answer, Delta Airlines brings cross-claims for indemnity and contribution against UTi. Delta has no basis to bring these claims, however, given its tacit admissions that the damages, if any, were incurred as a result of Swissport, the entity Delta contracted to handle and load the cargo.  The cross-claims provide:

> 22.     That if the defendant, Delta Air Lines, Inc., is held liable to the plaintiff herein for any loss, damage or delay, such liability on the part of Delta Air Lines, Inc. shall have been caused by or brought about by the acts and/or omissions of UTi United States, Inc., and Servicios Logistics Integrados, and, in that event, Delta Air Lines, Inc. shall be entitled to be indemnified and held harmless by UTi United States, Inc. and Servicios Logistics Integrados for all amounts including attorneys' fees.

> 23.     That if the defendant, Delta Air Lines, Inc., is held liable to the plaintiff herein then, in that event, Delta Air Lines, Inc. is entitled to contribution from UTi United States, Inc., and Servicios Logistics Integrados, in an amount corresponding to the proportion of fault on the part of UTi United States, Inc. and Servicios Logistics Integrados towards the payment of any judgment which may be entered in favor of the plaintiff herein.

As a matter of law, however, Delta Air Lines does not have any claim against UTi, as the freight forwarder in this matter.  UTi hired Delta to provide air transportation of the subject cargo, not the reverse.  UTi, as freight forwarder may have owed a duty to Bristol-Meyers, as the shipper, to

prepare documents accurately describing the cargo to be shipped, based upon such information provided by the shipper. However, UTi owed no such duty to Delta Airlines, as carrier of the cargo. *Atlantic Overseas Corp. v. Feder*, 452 F.Supp. 347, 350-51 (S.D.N.Y. 1978). In fact, Delta has failed to alleged that UTi, as a freight forwarder, owed it any duties or that UTi breached those duties.

There is absolutely no factual basis to support that UTi breached any duties owed to Delta. Based upon the sworn affidavit of Kevin Woods as well as the pleadings and responses to discovery, it is clear that UTi never handled the subject cargo and that its only responsibility     There is no factual basis to support any theory that UTi was somehow responsible for the alleged damages to the cargo. On the contrary, Delta's Third-Party Complaint, ¶ 15 against Swissport clearly states that "Any damage to cargo transported by DELTA from JFK to Barcelona happened while the cargo was in the possession and control of SWISSPORT."

Delta does not, and cannot claim that UTi was responsible for the alleged damages. This fact is undisputed and UTi should therefore be granted summary judgment in its favor on Delta's cross-claims.

Similarly, UTi obviously owed no duty to Swissport. Any claims of Swissport for indemnity or contribution can only be brought only against Delta, with whom Swissport was in contractual privity. It is undisputed that UTi had no involvement with the loading or packaging of the cargo in question. The only entities who handled the cargo was Bristol-Meyers, Delta and Swissport. Similar to Delta, if Swissport claims that there was an error with regard to the shipping documents or with the packaging of the cargo, those claims operate as complete affirmative defenses, and not as valid cross-claims as against UTi.

Therefore, for the reasons stated herein, UTi is entitled to summary judgment against Swissport on its cross-claim contribution.

**E.    UTi is entitled to Attorney's Fees.**

It is well-settled in this District that "[I]n indemnity cases, the courts have regularly required the indemnitor to reimburse the indemnitee for the costs of defending the original suit." *Hapag Lloyd*, 385 F.Supp.2d at 316 (quoting *Demsey & Assoc., Inc. v. S.S. Sea Star*, 500 F.2d 409, 411 (2d Cir. 1974). The Court described the reasoning behind this rule that "Indemnity obligations…require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims…..Legal fees and expenses incurred in defending the original claims are such costs and this "fall squarely within the obligation to indemnify." *Id*. (quoting *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir. 1985)).

The Second Circuit in *Victoria Sales* upheld the district court's finding that the carrier must indemnify the shipper for the its loss, which included attorney's fees and costs expended in the litigation. *Victoria Sales*, 917 F.2d at 708 (citing *Peter Fabrics, Inc.*, 765 F.2d at 315l; *Owens v. Palm Tree Nursing Home, Inc.*, 89 A.D.2d 619, 620-21 (2d Dept. N.Y. 1982)).

Therefore, UTi is entitled to an award of attorney's fees and costs in defending this action due to the actions or inactions of Delta Airlines in causing the alleged damage to the subject cargo. Further, on the status conference before the Court on this matter, the Court directed UTi to seek attorney's fees for the filing of the instant motion.  Therefore, UTi is entitled to an award of attorney's fees for its preparation of the instant motion for summary judgment.

**F.    UTi is Entitled to Summary Judgment in its Favor for the Claims Brought by Plaintiff.**

**i.    If UTi is found liable as carrier, its liability is limited by the terms of the Montreal Convention.**

If UTi is found liable for the damages, its liability is expressly limited by Article 22(3) of the Montreal Convention, which provides:

> In the carriage of cargo, the liability of the carrier in the case of destruction, loss, damage or delay is limited to a sum of 17 Special Drawing Rights per kilogram, unless

the consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless it proves that the sum is greater than the consignor's actual interest in delivery at destination.

As of the date of the filing of this motion, the limitation of liability amounts to $27.53 per kilogram.[3]

It is also undisputed that Bristol-Meyers never made any special declaration for the transport. (Affidavit of Kevin Woods, ¶ 8).    UTi acted as a freight forwarder, or indirect air carrier subject to the terms and limitations found in the Montreal Convention. *Royal Insurance v. Amerford Air Cargo*, 654 F.Supp. 679 (S.D.N.Y. 1987). Therefore, UTi's liability is limited to $27.53 per kilogram of cargo damaged.[4]

> ii.    **UTi has no liability for the alleged damages under the Montreal Convention.**

Nevertheless, the terms of the Montreal Convention absolve UTi for liability for the alleged damages.

Article 18(2)(b) of the Montreal Convention provides in pertinent part:

Article 18 – Damage to Cargo:

2.    However, the carrier is not liable if and to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from one or more of the following:

> b)    defective packing of that cargo performed by a person other than the carrier or its servants or agents;

---

[3] As set forth by the Southern District of New York in *Vigilant Ins. Co. v. World Courier, Inc.* 2008 WL 2332343 at n. 4 (S.D.N.Y. June 4, 2008), "The Special Drawing Right ("SDR") is a fluctuating international reserve asset created by the International Monetary Fund. See http://www.imf.org/external/np/exr/facts/sdr.htm.

[4] UTi expressly notes that the Survey Report, on page 3, clearly reveals that 600 of the 1392 cartons of Megace were "found to be in good condition and with original packing." It is clear, then, that although the air waybills lists the weight of the shipment as 5323.5 kg, the weight of the damaged portion is obviously much less. The law is well-settled in this District that "[W]hen the lost or damaged goods constitute less than the entire shipment, the Warsaw Convention's liability limitation applies to the actual weight of the lost or damaged goods, not the weight of the entire shipment." *Williams Dental Co., Inc. v. Air Express Int'l,* 824 F.Supp. 435, 443 (S.D.N.Y.1993) *aff'd,* 17 F.3d 392 (2d Cir. 1993). For purposes of determining the extent of any liability of UTi, a determination must be made as to the weight of the damaged portion of goods. At this time, UTi merely asks the Court, by way of this Motion, to declare the limitation of liability (if Article 18 does not apply) to be applicable to UTi.

As set forth above, the alleged damages occurred as a result of the unpacking and re-packing of the cargo by either Delta and/or its subcontractor, Swissport.  Therefore, for the reasons stated therein, UTi is absolved of any liability under the Convention for any alleged damages suffered by Plaintiff.

Furthermore, Article 30 of the Montreal Convention provides, in pertinent part:

> **1.** If an action is brought against a servant or agent of the carrier arising out of damage to which the Convention relates, such servant or agent, if they prove that they acted within the scope of their employment, shall be entitled to avail themselves of the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention.
>
> **2.** The aggregate of the amounts recoverable from the carrier, its servants and agents, in that case, shall not exceed the said limits.

Article 30 reveals that the total aggregate damage claim which can rest with the Plaintiff will be the full liability limits.  Plaintiff's recovery is therefore limited to the 17 SDRs per kg of damaged cargo.  Plaintiff cannot recover the limitation of liability from each of the carriers.  Therefore, since Delta will be unable to avoid a summary judgment in favor of UTi, any judgment of liability in favor of the Plaintiff should pass-thru to Delta.


**IV. CONCLUSION**

It is clear that UTi acted at all times material as a freight forwarder or indirect air carrier on behalf of Bristol-Meyers.  As such, its responsibilities and duties are governed by the Montreal Convention.  In addition, its liability is either absolved or limited by the terms of the Convention.  Since any alleged damage to Plaintiff's cargo occurred as a result of the packing and unpacking of the cargo by entities other than UTi, Article 18 serves to absolve UTi of liability for the damage.  Alternatively, Article 22 clearly limits the liability of UTi, as indirect air carrier to the limits provided therein.

UTi was hired by the Bristol-Meyers to act as freight forwarder and arrange the transportation via air carrier for its shipment of pharmaceuticals from New York to Spain.  UTi hired Delta Airlines

to carry the cargo in its aircraft and prepared the necessary documentation to effectuate the transport. UTi satisfactorily performed its obligations to Bristol-Meyers.

Bristol-Meyers, in its Amended Complaint, alleges that the cargo was tendered to Delta Airlines in good condition, but that same arrived damaged in Spain. Bristol-Meyers asserts that the actions or inaction of Delta Airlines and/or its cargo handler, Swissport, caused the cargo to sustain damage.

The evidence is clear that UTi never had custody or possession of the cargo, and that the damage, if it exists, occurred as a result of the unpacking and repacking of the cargo by Delta Airlines and/or its cargo handler, Swissport. The Survey Report stated that the damage occurred while in the custody of Delta Airlines and resulted from the depalletization and re-palletization of the subject cargo. The admissions of both Delta and Swissport would clearly lead a trier of fact to conclude that UTi had absolutely no involvement in the alleged damages to the subject cargo. Bristol-Meyers does not even allege that the cargo was damaged as a result of the actions of UTi.

If found to be liable to Plaintiff, UTi's liability would only be technical and vicarious, stemming from its contractual obligations to arrange for the transportation of the cargo. In contrast, Delta's actions or inactions make it directly and primarily responsible for the alleged damages. As such, UTi is entitled to be indemnified for any and all loss it incurs as a result of the actions or inactions of Delta with respect to any alleged damage to the cargo, including reasonable attorney's fees and costs incurred in defending this action.

WHEREFORE, for the foregoing reasons, UTi, United States respectfully requests that this honorable Court grant its Motion for Summary Judgment as against Plaintiff American Home Assurance a/s/o Bristol-Meyers Squibb, on its cross-claim for indemnity as against Defendant/Cross-defendant Delta Airlines, on Delta's cross-claims for indemnity and contribution in favor of UTi's, on Swissport's cross-claim for contribution in favor of UTi, and that UTi United States be awarded

reasonable attorney's fees and costs incurred in defending this action and for the preparation of this instant motion and for such other and further relief as this Court deems just and proper.

Dated: Miami, Florida
       August 5, 2008

                                              _____ /s/ Andrew Spector _____
                                             ANDREW R. SPECTOR (ARS 3887)
                                             HYMAN SPECTOR & MARS, LLP.
                                             150 West Flagler Street
                                             Suite 2701
                                           Miami, Florida  33130
                                           Telephone: (305) 371-4244
                                           Facsimile: (305) 371-5930
                                           Attorneys for UTi, United States, Inc.